IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL W. MCCARRIN<br>    *Plaintiff*,<br><br>v.<br><br>MARIO POLLERA. *individually and as Union Trustee*; TIMOTHY FEENEY, *individually and as Union Trustee*; JOSEPH LYONS, *individually, and as Management Trustee*; and, NEWSPAPER AND MAGAZINE EMPLOYEES UNION AND PHILADELPHIA PUBLISHERS PENSION PLAN<br>    *Defendants*. | :<br><br>:<br><br>:    CIVIL ACTION<br>    NO. 17-1691<br>:<br><br><br><br>: |

## **MEMORANDUM**

Jones, II  J.                                                                                                    September 27, 2019

### I.    INTRODUCTION

Plaintiff Michael McCarrin commenced this action against Defendants Mario Pollera, Timothy Feeney, Joseph Lyons, and the Newspaper and Magazine Employees' Union and Philadelphia Publishers' Pension Plan, alleging that Defendants improperly denied his application for retirement benefits, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA").[1] Specifically, Plaintiff alleges that the Pension Plan, as managed and amended by Defendants, contained rules which preempted the Selective Services Act of 1940,[2] leading Defendants to deny Plaintiff vesting credit for three years of military service. Plaintiff brings his claim under Section 1132(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).  Plaintiff

---
[1] 29 U.S.C. §§ 1001, *et seq.*
[2] 50 U.S.C. App §§ 301, *et seq.*

further alleges Defendants' actions constituted a breach of fiduciary duties, owed to both Plaintiff and other Plan Participants. Defendants filed the instant Motion for Summary Judgment, to which Plaintiff has responded and Defendants have replied. For the reasons set forth herein, Defendants' Motion shall be granted.

## II.  FACTUAL BACKGROUND

### a. Undisputed Facts

The undisputed facts[3] establish that Plaintiff commenced working as a Mailer at the Philadelphia Inquirer newspaper in September 1967. (SUF ¶ 1; RSUF ¶ 1.) He remained employed as a Mailer until he began serving in the military in 1969.[4] (SUF ¶ 2; RSUF ¶ 19.) During the years before his military service began, Plaintiff was considered a Part-time Journeymen Extra Mailer, meaning he did not have regular shifts, nor was he guaranteed a set number of shifts per week or per year. (SUF ¶ 3 n.1; ECF 45-22, Ex. D-22, ¶¶ 5-9; RSUF ¶ 35.) In 1967, Plaintiff worked 44 shifts. (SUF ¶ 1; RSUF ¶ 6.) In 1968, he worked 141 shifts. (SUF ¶ 1; RSUF ¶8.) In 1969, he worked 54 shifts. (SUF ¶ 1; RSUF ¶ 14.)

Thereafter, from 1969 through August of 1971, Plaintiff served in the military. (SUF ¶ 2; RSUF ¶ 19.) Upon his discharge from the military, Plaintiff returned to the Inquirer and continued working there through 1974. (SUF ¶ 2; RSUF ¶¶ 21, 41-43; ECF 45-6, Ex. D-7.) During this time, he was once again employed as a Part-time Journeymen Extra Mailer, and did not have regular shifts or a set schedule. (SUF ¶ 3 n.1; ECF 45-22, Ex. D-22; RSUF ¶ 35.) In 1971, Plaintiff worked 87 shifts. (SUF ¶ 2; RSUF ¶ 21.) In 1972, he worked 106 shifts. (SUF ¶ 2;

---

[3] For purposes of this discussion, the Court shall refer to Defendants' Statement of Undisputed Facts as "SUF" and Plaintiff's Response thereto as "RSUF."
[4] The parties dispute when in 1969 Plaintiff began his military service. Plaintiff contends his service began in May of that year, while Defendants maintain his service began in November. (SUF ¶ 2; RSUF ¶¶ 19, 35.) For reasons which follow, this fact is not material.

2

RSUF ¶41.) In 1973, he worked 165 shifts. (SUF ¶ 2; RSUF ¶ 42.) In 1974, he worked 105 shifts. (SUF ¶ 2; RSUF ¶ 43.) Plaintiff did not work at the Inquirer from 1975 through 1999.[5] (SUF ¶ 5; Ex. D-7.)

In 2000, Plaintiff returned to work as a Mailer at the Inquirer, and he worked 38 shifts during that year.[6] (SUF ¶ 6; Ex. D-7; ECF 45-12, Ex. D-13.) In 2001, he worked 151 shifts. (SUF ¶ 6; Ex. D-7; Ex. D-13.) In 2002, Plaintiff worked 148 shifts. (SUF ¶ 6; Ex. D-7; Ex. D-13.) In 2003, he worked 38 shifts. (SUF ¶ 6; Ex. D-7; Ex. D-13.) In 2004, Plaintiff worked 24 shifts. (SUF ¶ 6; Ex. D-7; Ex. D-13.) In 2005, he worked 225 shifts. (SUF ¶ 6; Ex. D-7; Ex. D-13.) In 2006, he worked 204 shifts. (SUF ¶ 6; Ex. D-7; Ex. D-13.) In January 2007, he worked 4 shifts. (SUF ¶ 6; Ex. D-7; Ex. D-13.) Plaintiff stopped working at the Philadelphia Inquirer in 2007. (SUF ¶ 6; Ex. D-7; Ex. D-13.)

After turning 65 years-old in 2015, Plaintiff applied for pension benefits.[7] (SUF ¶ 7; RSUF ¶ 46; Ex. D-13 at 2.) In January 2016, he provided the Plan Administrator with documents to support his claim for benefits for the years he was enlisted in the military. (SUF ¶ 8; RSUF ¶ 55; Ex. D-13 at 1.) On March 24, 2016, Plan Administrator Diane Binke sent Plaintiff a letter advising that his claim for three years of credited service for the time he served in the military was denied on the basis that he was not employed in a "covered" employment capacity prior to the year 2000. (SUF ¶ 9; RSUF ¶ 63.) Specifically, according to Binke, Plaintiff was ineligible

---

[5] Plaintiff does not dispute this fact, but fails to explicitly say so in his RSUF. Because he only addresses *disputed* facts in his response, Plaintiff's silence on the issue will be deemed an acceptance of the fact.
[6] Plaintiff does not dispute this fact, but fails to explicitly say so in his RSUF. Because he only addresses *disputed* facts in his response, Plaintiff's silence on the issue will be deemed an acceptance of the fact.
[7] Plaintiff does not dispute this fact, but fails to explicitly say so in his RSUF. Because he only addresses *disputed* facts in his response, Plaintiff's silence on the issue will be deemed an acceptance of the fact.

3

for credited service while he was in the military because he did not work in Covered Employment either immediately before or immediately after his period of military service. (SUF ¶ 9; RSUF ¶ 63; ECF 45-4, Ex. D-5.) Binke informed Plaintiff of his right to appeal the denial, which he did on April 4, 2016. (SUF ¶¶ 9-10; RSUF ¶¶ 66-67; Ex. D-5.) The Board of Trustees of the Newspapers and Magazine Employee Union and Philadelphia Pension Fund (the "Board") considered Plaintiff's appeal at their April 12, 2016 quarterly meeting, and again denied Plaintiff's claim for credited service for his time in the military. (SUF ¶ 11; RSUF ¶¶ 67-72.)

Thereafter, the Board issued a letter to Plaintiff wherein it explained the reasoning behind its decision. (SUF ¶ 12; RSUF ¶ 76.) The Board stated that Plaintiff had not worked in Covered Employment from 1967 through 1974 because, under the 1972 Plan in effect when he left the Inquirer, only Regular Full-Time employees on the Inquirer's Priority List were considered covered. (SUF ¶ 12; RSUF ¶ 76; ECF 45-10, Ex. D-11.) Notwithstanding that fact, the Board found that even if Plaintiff had worked in Covered Employment from 1967 through 1974, he would not be entitled to credited service for that period because Plaintiff was not vested in any benefits under the terms of the Plan. (Ex. D-11 at 2-3.) Additionally, Plaintiff experienced breaks in service because he did not work at the Inquirer in 1974 or 1975, or between 1976 and 2000. (Ex. D-11 at 2-3.) The Board concluded that the cumulative years of break in service served to extinguish any Pension credits that Plaintiff had arguably accrued from 1967 through 1974, including any Pension credit accrual during his term of military service, whether analyzed under the terms of the 1972 Plan, its 1976 amendments or the 1985 Plan. (Ex. D-11 at 2-3.)

4

### b. Disputed Facts[8]

Plaintiff disputes Defendants' contention that the 1972 Pension Plan governs his claim for benefits. Instead, he argues his claim is governed by the terms of the 2006 Pension Plan which was in effect in 2007—the last year he last worked for the Inquirer. (ECF 46, Pl.'s Resp. 19.) Plaintiff further disputes Defendants' contention that because Plaintiff did not work in Covered Employment during the years 1967 through 1974, the Inquirer made no Pension contributions on his behalf. (RSUF ¶¶ 2, 5, 13, 18, 25, 30, 36, 40, 44.) Finally, Plaintiff disputes Defendants' position that he is not entitled to military credit.

A party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record, which may include affidavits. *See* Fed. R. Civ. P. 56(c)(1). However, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002)) (internal quotation marks omitted). Instead, an affiant must set forth specific facts that reveal a genuine issue of material fact. *Id.* If a party fails to properly address another party's assertion of fact, a court may consider the fact undisputed and grant summary judgment. *See* Fed. R. Civ. P. 56(e)(2)-(3); *see also Judge C. Darnell Jones II Chambers Policies and Procedures* (rev'd Dec. 2, 2016), http://www.paed.uscourts.gov/documents/procedures/jonpol.pdf ("The Court will not consider any description of a fact that is not supported by citation to the record. Statements of Material Facts in support of or in opposition to a motion for summary judgment must include

---

[8] The facts set forth above include twelve of Defendants' nineteen Statements of Undisputed Material Facts, though Plaintiff purports to only agree with five of them. However, in the process of "disagreeing" with Defendants' Statement of Undisputed Material Facts, Plaintiff ultimately concedes many of these facts are indeed undisputed. (*See generally* RSUF.)

specific and not general references to the parts of the record that support each of the statements, such as the title of or numbered reference to a document, the name of a deponent and the page(s) of the deponent's deposition, or the identity of an affidavit or declaration and the specific paragraph relied upon. Pinpoint citations are required.") With this standard in mind, this Court shall address each dispute in turn.

### i. The 2006 Pension Plan

Plaintiff provides no citation to the record to support his argument that the 2006 Pension Plan governs his claim for benefits. He appears to argue that because he was trying to claim benefits under the Plan which was in effect in 2006 (what Plaintiff terms the "2006 Plan" was actually the 2001 Plan) *this* is the Plan under which Defendants' should have analyzed his claim. (*See, e.g.*, RSUF ¶¶ 46-49.) Simply saying this does not make it true. Plaintiff cites to no evidence that supports his claim that the terms of the 2001 Plan govern his dispute with Defendants. In contrast, Defendants provide full evidentiary support for their position that prior Plans are what govern Plaintiff's eligibility benefits. (*See generally* Exs. D-11, D-14, D-15, D-16, D-17; D-24 at 60-61; *see also* SUF ¶¶ 9, 12). The record makes it clear that under the Plan in effect in 2006, any earlier credited service would not be counted if it had been lost under prior Plans, and it was therefore appropriate to determine whether Plaintiff had been vested under the prior Plans. (*See e.g.* D-16 at 1, 22-23; D-24 at 60-61.)[9] The Court therefore finds this fact to be undisputed by the record. *See* Fed. R. Civ. P. 56(e)(2) ("the court may . . . consider the fact

---

[9] As stated above, Defendant maintains that the 1972 Plan controls for purposes of determining whether or not Plaintiff's employment for the years 1967 through 1974 was "covered employment" that could potentially entitle him to pension benefits. Although Plaintiff argues that the "2006 Plan" controls, he also claims there was a 1969 Plan that he requested and Defendants have failed to provide to him. (RSUF ¶¶ 15-16.) Plaintiff has submitted no evidence of record to support his contention that a 1969 Plan existed. Nevertheless, Plaintiff maintains the "2006 Plan" should control.

undisputed" when a party fails to properly support an assertion of fact or address another party's assertion of fact).

### ii. Plaintiff's Pre-2000 Work

The record does not support Plaintiff's position that there is a dispute about whether he worked in Covered Employment before the year 2000. Plaintiff contends this work was Covered Employment because he "worked under a unit of the Union for an employer subject to a Collective Bargaining Agreement and Plaintiff's employer was required to make contributions to the Pension for each shift worked by the Plaintiff." (RSUF ¶ 44; *see also* ¶ 40.) Plaintiff provides no citation to the record to support this contention beyond his own self-serving Affidavit. Specifically, Plaintiff contends he was covered by a Pension Plan for his pre-2000 work at the Inquirer, and that "[c]ontributions were made based on Plaintiff's work to the Pension fund by Plaintiff's employer for all the shifts worked by Plaintiff[.]" (ECF No. 46-5, Pl.'s Aff. ¶¶ 1, 40.)[10] This statement—the only portion of the record to which Plaintiff cites in support of his dispute—amounts to nothing more than a conclusory, self-serving assertion, which is only part of a larger affidavit that fails to set forth specific facts to reveal a genuine issue of material fact. *See Kirleis*, 560 F.3d at 161.

Furthermore, the evidentiary record before the Court demonstrates that the Inquirer did not make any Pension contributions on Plaintiff's behalf until the year 2000. (Ex. D-25 at 54:16-24 and 55:1-2.) Additionally, as Defendants note, Plaintiff's Complaint failed to put these facts at issue, as it did "not involve any claims that Defendants failed to give him pension credits for contributions made on his behalf to a predecessor Plan[.]" (ECF 47, Defs.' Surreply ¶¶ 5, 13, 18,

---

[10] Throughout his Response and within his Affidavit, Plaintiff repeatedly relies upon Exhibit B-6 as support for his statements. Exhibit B-6 is not a document of record. This Court further notes Plaintiff's failure to provide pinpoint citations to the record.

25; *see also* Compl. 2 (noting in his Synopsis of the case that "he was entitled to seven years pension credit" based on his three years of military service and four years of work in the early 2000s); RSUF ¶ 75.) As such, this does not constitute a genuine issue of material fact and all references to Plaintiff being a covered employee from 1967 through 1974 are therefore stricken in accordance with Federal Rule of Civil Procedure 56(c)(1)(A), (e) and this Court's Policies and Procedures.

         **iii.**   **Plaintiff's Military Leave of Absence as Covered Employment**

Plaintiff disputes Defendants' contention that under the terms of *any* of the relevant Pension Plans, his military leave of absence was not considered Covered Employment. (RSUF ¶ 36.) Plaintiff fails to support his position that this was Covered Employment with any citation to the record. Accordingly, Plaintiff's unsupported version of this fact shall be stricken pursuant to Fed. R. Civ. P. 56(e). The record reflects that there is no genuine dispute as to this issue.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted). Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive

law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (quoting *Celotex*, 477 U.S. at 325). "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted). Accordingly, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

As previously discussed, if a party sets forth facts in conclusory, self-serving affidavits, those facts are "insufficient to withstand a motion for summary judgment." *Kirleis*, 560 F.3d at 161 (citing *Blair*, 283 F.3d at 608). Rather, the affiant must set forth specific facts that reveal a genuine issue of material fact. Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial.").

Finally, this Court notes that Plaintiff is litigating this matter *pro se*. However, Plaintiff is an attorney licensed to practice in the Commonwealth of Pennsylvania. As such, Plaintiff is entitled to no deference in his filings and will *not* be held "to less stringent standards than formal

pleadings by lawyers." *United States v. Bradley*, 505 F. App'x 220, 221 n.1 (3d Cir. 2012) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

**III. DISCUSSION**

**A. Plaintiff's Claim for Retirement Benefits Under ERISA**

In Count I of Plaintiff's Complaint, he alleges that Defendants improperly denied his application for retirement benefits based on their "fail[ure] to keep records of Plaintiff's pre 2000 [sic] employment as required by ERISA." (Compl. ¶ 20.) He further alleges that Defendants, through the terms of the Pension Plan, "made rules [that] preempted an Act of Congress and denied Plaintiff vesting credit for [his] three years of military service under the Selective Services Act of 1940 et. seq." (Compl. ¶ 20.) Specifically, Plaintiff claims Defendants violated the terms of the Pension Plan in effect on the date he was last employed, and that he is therefore owed benefits under the Section 1132(a)(1)(B) of ERISA.

ERISA allows a participant in an employee benefit plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). ERISA does not dictate what benefits must be afforded plan participants. As such, "only the plan can create an entitlement to benefits." *Smith v. Contini*, 205 F.3d 597, 602 (3d Cir. 2000). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard *unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan*." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (emphasis added).

When the plan itself confers discretion on the administrator to determine eligibility for benefits, a district court may only reverse the administrator's decision if it was "arbitrary and

capricious." *Id.* at 114-15. "The 'arbitrary and capricious' standard is essentially the same as the 'abuse of discretion' standard." *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 n.4 (3d Cir. 1993). When applying this standard of review, "the district court may overturn a decision of the Plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.*

As a threshold matter, this Court must determine what standard of review applies to Plaintiff's claim for benefits. The terms of both the 2001 Plan (in effect when Plaintiff left employment with the Inquirer in 2007) and the 2014 Plan (in effect when he filed his application for benefits in 2015) state: "The Board shall interpret the Plan and shall determine all questions arising in the administration, interpretation and application of the Plan[.]" (Exs. D-16 and D-17, Sec. 9.6.) The Agreement and Declaration of Trust for the Plan states similarly. (Ex. D-18, Art. VIII Sec. 2 ("The Board of Trustees shall have the power to interpret, apply, construe, and amend the provisions of this Agreement and the Plan, and any construction, interpretation and application . . . shall be binding[.]").) This Court therefore finds that the arbitrary and capricious standard applies and it will "enforce the Plan as written unless [it] can find a provision of ERISA that contains a contrary directive." *Smith*, 205 F.3d at 602 (citing *Dade v. North American Philips Corp.*, 68 F.3d 1558, 1562 (3d Cir. 1995)).

At issue in this case is whether Plaintiff is entitled to Pension credit for his three years of military service. Under the Uniform Services Employment and Reemployment Rights Act, ("USERRA"), 38 U.S.C. §§ 4301, *et seq.*, upon return to work from military service, an employee is "treated as not having incurred a break in service with the employer or employers maintaining the [pension] plan by reason of such person's period or periods of service in the uniformed services." 38 U.S.C. § 4318(a)(2)(A). This section applies to plan *participation* and

11

vesting, as well as accrual of benefits. 20 C.F.R. § 1002.259. At its core, USERRA aims to ensure that a period of military service is treated no differently than if the employee had remained at work; in other words, under USERRA, an employee is entitled to pension benefits *only* if he would have been entitled to them when working in his pre-service capacity. *See id.*; *see also Scanlan v. Am. Airlines Grp., Inc.,* 384 F. Supp. 3d 520, 523 (E.D. Pa. 2019) (recognizing that USERRA serves to protect veterans so that they maintain their pre-service status within their employment).

As such, in order to be covered by Section 4318(a)(2)(A), an employee would have had to have been a participant in the pension plan prior to serving in the military. USERRA affords a veteran no "extra" benefits for having served in the military; s/he gets only what s/he would have gotten had s/he remained on the job, rather than serving. *See* 20 C.F.R. § 1002.2194 ("The Act does not prohibit lawful adverse job consequences that result from the employee's restoration on the seniority ladder. Depending on the circumstances . . . an employee [may] be reemployed in a higher or lower position, laid off, or even terminated . . . Similarly, the status of the reemployment position requires the employer to assess what would have happened to such factors as the employee's opportunities for advancement, working conditions, job location, shift assignment, rank, responsibility, and geographical location, if he or she had remained continuously employed.").

Although *Fishgold v. Sullivan Drydock & Repair Corporation* arose under the Selective Training and Service Act of 1948 (USERRA's predecessor), the Supreme Court's analysis is applicable to the facts of this case. In *Fishgold*, it was determined that the Act guaranteed a returning veteran nothing more than what he would have received, had he remained in his job. *Fishgold,* 328 U.S. 275, 285 (1946) ("[S]ervice in the armed services is counted as service in the

plant so that he does not lose ground by reason of his absence. But we would distort the language of these provisions if we read it as granting the veteran an increase in seniority over what he would have had if he had never entered the armed services. . . . by these provisions Congress made the restoration as nearly a complete substitute for the original job as was possible.").

Here, the record presents no evidence that Plaintiff would have been entitled to pension benefits had he remained in his job rather than served in the military. Plaintiff was employed part-time before entering the military and was therefore only entitled to a part-time position upon his restoration to work. The record indicates this is precisely what happened; Plaintiff worked as a Part-time Journeymen Extra Mailer before his military service, as well as upon his return to work. (D-22, ¶¶ 5-9; SUF ¶ 3 n.1; RSUF ¶ 35.) Under the terms of the Pension Plan in effect at the time, an employee was defined in pertinent part as "any person who is employed by a Publisher under a Collective Bargaining Agreement with the Union, is carried on the priority list agreed to between the Publisher and the Union, ***and*** is considered as regularly employed and available for full-time work with such Publisher." (D-14, Sec. I 1.12(a)) (emphasis added); *see also* D-24 at 60-61.) Plaintiff has provided no evidence of record to establish that he was an "employee" for purposes of the Plan. Further, although Plaintiff's position as a Part-time Journeymen Extra Mailer meant he was *available* for full-time work, it did not mean he actually worked enough shifts to qualify as a regular, full-time priority list employee. In fact, Plaintiff conceded as much. (D-24 at 56-57.)

In order to be considered a regular, full-time employee, Plaintiff would have had to work 260 shifts per year. (Ex. D-11 at 2; Ex. D-22 ¶¶ 5-8.) The record indicates he did not do so at any point, either before his military service or in the years immediately following his service. (SUF ¶¶ 1-2; RSUF ¶¶ 6, 8, 14, 19, 21, 41-43.) As such, Plaintiff was not an employee as defined by

13

the Plan, and was therefore not a Plan participant. Nonetheless, Plaintiff maintains he is entitled to a full year of credited service for each year he worked from 1967 through 1974 because his "work was covered under a Collective Bargaining Agreement which required the Employer to make contributions to the Pension Fund for Plaintiff's covered employment." (Pl.'s Resp. Br. 23.) Again, Plaintiff provides no support for this assertion beyond his own declaration, as contained in a self-serving Affidavit. (Ex. B-8 ¶¶ 40, 45.)

With specific regard to Plaintiff's claim that Defendants failed to keep records of his pre-2000 employment, this Court notes the following:

> Title 29, United States Code, § 1059(a)(1) provides that "every employer shall, in accordance with regulations prescribed by the Secretary, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees. . . ."
>
> Significant for the purpose of this lawsuit, § 1059(b) states that "[i]f any person who is required, under subsection (a) of this section, to furnish information or maintain records for any plan year fails to comply with such requirement, he shall pay to the Secretary a civil penalty of $ 10 for each employee with respect to whom such failure occurs, unless it is shown that such failure is due to reasonable cause." Undeniably, § 1059 obligates an employer to maintain certain time records; however, ***it is also undeniable that § 1059 does not provide a private right or cause of action for affected employees***. Rather, Congress has provided for a civil penalty payable, upon the finding of a violation, to the Department of Labor.

*Premick v. Dick's Sporting Goods, Inc.*, 06-CV-0530, 2007 U.S. Dist. LEXIS 3702, at *14-15 (W.D. Pa. Jan. 18, 2007) (emphasis added).

ERISA did not go into effect until September 2, 1974. Assuming *arguendo* Plaintiff could recover on the basis of Defendants' alleged failure to keep records of his pre-2000 employment, and assuming *arguendo* that Plaintiff's unsupported allegations of hours worked were valid, he *still* would not be eligible for benefits under any of the Plans in effect between 1967 and 2015.

14

Under ERISA, Plaintiff is not entitled to any benefits provided for in a plan for which he was ineligible, as "only the plan can create an entitlement to benefits." *Smith*, 205 F.3d at 602. This "limitation reflects ERISA's principal function: to 'protect *contractually* defined benefits.'" *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985)) (emphasis added). Fiduciaries are tasked with administering the Plan, and in so doing, they are obligated to comply with its terms. *Epright v. Environmental Resources Management, Inc. Health and Welfare Plan*, 81 F.3d 335, 339 (3d Cir. 1996) (citing *Nazay v. Miller*, 949 F.2d 1323, 1329 (3d Cir.1991)). The "Plan Administrator has discretion when interpreting the terms of the Plan; however, the interpretation may not controvert the plain language of the document." *Id.* (citing *Gaines v. Amalgamated Ins. Fund*, 753 F.2d 288, 289 (3d Cir.1985)). This Court finds that the Plan Administrator's interpretation of the term "employee" is reasonable, and thus the Plan's denial of Plaintiff's claim for benefits was "reasonably consistent with unambiguous plan language [and] not arbitrary." *Bill Gray Enterprises, Inc. Employee Health and Welfare Plan v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001). Accordingly, Plaintiff was not a covered employee under the terms of the Plan, and his claim for benefits must be denied as a matter of law.[11]

### B. Breach of Fiduciary Duties under ERISA, 29 U.S.C. § 1132(a)(2) and (a)(3)

In Counts II and III of his Complaint, Plaintiff alleges that by denying his claim for benefits, Defendants breached their fiduciary duties. He brings his claims pursuant to 29 U.S.C. § 1132(a)(2) and (a)(3), yet as written, these claims are essentially one and the same.

---

[11] In further support of their Motion, Defendants maintain that Plaintiff's twenty-five (25)-year break in service makes him ineligible for any benefits he claims to qualify for otherwise. (Summ. J. Mem. 25-33.) Inasmuch as this Court has determined that Plaintiff was not a covered employee during the relevant time periods and is therefore not entitled to pension benefits, Defendants' break in service argument is rendered moot.

Count II of Plaintiff's Complaint is brought under 29 U.S.C. § 1132(a)(2), which provides a jurisdictional basis to bring an action for a breach of fiduciary duty under Section 1109 of ERISA. Section 1109, however, is inapplicable to a claim for benefits, *or any other relief*, by a Plan participant. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) ("[T]he entire text of § [1109] persuades us that Congress did not intend that section to authorize any relief except for *the plan itself*.") (emphasis added); *see also id* at 140-141 (noting that the statute's references to "such other equitable or remedial relief as the court may deem appropriate[,]" pertain only to relief available to the Plan). In Count II of his Complaint, Plaintiff seeks monetary damages for himself, as well as "any other relief, equitable or otherwise, deemed appropriate by this Court[.]" (Complaint ¶ 39 §§ (a), (e).) As such, the Court finds that Plaintiff cannot prevail on a claim under 29 U.S.C. §1132(a)(2), as he is not seeking relief on behalf of the Plan itself.

Count III of Plaintiff's Complaint is brought under 29 U.S.C. § 1132 (a)(3), which allows for a right of action to enjoin violations of the Plan, to obtain other equitable relief to address such violations, or to enforce the terms of the Plan. 29 U.S.C. § 1132 (a)(3). This Section creates no substantive right to benefits; it merely creates a right to bring an enforcement action in federal court. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011) ("[A] fiduciary can be surcharged under § [1132](a)(3) only upon a showing of actual harm—proved (under the default rule for civil cases) by a preponderance of the evidence. That actual harm may . . . come from the loss of a right protected by ERISA[.]") Accordingly, as noted by Defendants, Plaintiff's reliance on this section of ERISA "falls or rises on the Court's determination of the underlying issues of whether the Trustees breached the terms of the Plan or violated applicable law in denying Plaintiffs benefit claims." (Mot. Summ. J., ECF 44-3 at 42.) Because the court finds that

Defendants did not violate the terms of the Plans or applicable law, Plaintiff is not entitled to relief on this claim.

## V.     CONCLUSION

For the reasons set forth hereinabove, Defendants' Motion for Summary Judgment shall be granted in its entirety.

An appropriate Order follows.

BY THE COURT:

/s/  C. Darnell Jones, II   J.
